NATIONAL SAND, INC v NAGEL CONSTRUCTION, INC

Docket No. 106970. Submitted June 13, 1989, at Grand Rapids. Decided February 20, 1990.

The Missaukee Sanitary Drain Commission contracted with Nagel Construction, Inc., to construct a sewage treatment facility. Nagel subcontracted with National Sand, Inc., to excavate the sewage pits and to line the pits with clay available on the site. Progressive Engineering, Inc., prepared the plans and specifications for the project. After beginning excavation, National Sand discovered there was insufficient clay on the site to line the sewage pits. An alternate site was chosen and the contracts were modified to provide compensation for additional expenditures of money and labor required as a result of the insufficient clay deposits. The second site also proved to have insufficient clay deposits in the areas set forth in the plans. The contracts were again modified to provide compensation for the additional costs. National Sand completed its services under the original subcontract and received payment from Nagel pursuant to that contract, but Nagel refused to pay an additional $258,000 which National claimed was incurred as a result of the insufficient clay deposits. National filed a two count complaint against Nagel, Progressive Engineering, the drain commission, and others alleging breach of contract against all the defendants and malpractice against Progressive. The Missaukee Circuit Court, William R. Peterson, J., granted summary disposition in favor of Progressive and the drain commission on the breach of contract claims, finding no privity of contract between plaintiff and those defendants, and that the malpractice action against Progressive was barred by the expiration of the two-year malpractice period of limitation. Plaintiff appealed.

The Court of Appeals *held:*

1. A plaintiff may maintain an action in tort where he is injured by the defendant's negligent performance of contract even where there is no privity between the parties. A breach of

REFERENCES

Am Jur 2d, Contracts § 297; Limitation of Actions §§ 102, 105.
See the Index to Annotations under Engineers and Engineering; Limitation of Actions; Malpractice; Privity.

contract claim, however, requires a contractual relationship between the plaintiff and defendant. The trial court properly dismissed plaintiff's breach of contract claims against Progressive and the drain commission since there was no contractual relationship between plaintiff and these defendants. Plaintiff's tort claim on the basis of negligence or malpractice is not precluded by the lack of a contractual relationship.

2. Whether the trial court properly found that the two-year malpractice statute of limitations is applicable to plaintiff's tort claim against Progressive requires a determination of whether negligence by a civil engineer may properly be characterized as malpractice. If not, the three-year negligence statute of limitations would apply. Case law holds that the term "malpractice" as used in the statute of limitations refers only to those actions which were recognized as constituting malpractice when the Judicature Act of 1915 and the Revised Judicature Act of 1961 were adopted. Actions for malpractice against engineers do not appear to have been recognized by the common law at that time, therefore the two-year period of limitation would not be applicable to plaintiff's claim against Progressive. However, because this issue was not addressed by the trial court nor briefed by the parties and because if the three-year period of limitation were to be found applicable remand would be necessary to determine when plaintiff's cause of action accrued, this decision is without prejudice to Progressive's arguing that the common law did recognize a malpractice action against engineers sufficiently long ago to make the malpractice period of limitation applicable. Therefore, unless Progressive concedes that the three-year period of limitation is applicable, the trial court on remand is free to conclude that the two-year period of limitation for malpractice nevertheless applies if Progressive establishes that the common law recognized a malpractice action against engineers.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. CONTRACTS — NEGLIGENCE — BREACH OF CONTRACT — PRIVITY.

A plaintiff may maintain an action in tort where he is injured by the defendant's negligent performance of contract even where there is no privity between the parties, but a breach of contract claim requires a contractual relationship between the plaintiff and defendant.

2. LIMITATION OF ACTIONS — NEGLIGENCE — DAMAGES — PECUNIARY LOSSES.

The negligence statute of limitations is not limited to those

causes of action involving physical injury or physical damage to property but may, in certain instances, apply to causes of action brought to recover pecuniary losses resulting from traditional, primarily common-law, torts; where the injury complained of is not a traditional common-law tort, the residual six-year statute of limitations governing all other personal actions applies (MCL 600.5805, 600.5813; MSA 27A.5805, 27A.5813).

3. LIMITATION OF ACTIONS — MALPRACTICE.

The two-year malpractice statute of limitations applies only to those actions which were recognized as constituting malpractice when the Judicature Act of 1915 and the Revised Judicature Act of 1961 were adopted (MCL 600.5805[4]; MSA 27A.5805[4]).

*Catchick & Dodge* (by *James M. Catchick*), for plaintiff.

*Cholette, Perkins & Buchanan* (by *Kenneth L. Block*), for Progressive Engineering, Inc.

*Miller, Canfield, Paddock & Stone* (by *Richard A. Gaffin* and *Christopher G. Hastings*), for Missaukee Sanitary Drain Commission.

Before: HOLBROOK, JR., P.J., and SAWYER and GRIFFIN, JJ.

SAWYER, J. Plaintiff National Sand, Inc., appeals from an order granting partial summary disposition pursuant to MCR 2.116(C)(7) and (8), dismissing defendants Progressive Engineering, Inc., and Missaukee Sanitary Drain Commission from the suit. The order was certified as a final order under MCR 2.604(A). We affirm in part and remand.

Defendant drain commission contracted with defendant Nagel Construction, Inc., to construct a sewage treatment facility. Nagel subcontracted with National Sand to excavate the sewage pits and to line the pits with clay. Progressive Engineering prepared the plans and specifications for the project.

In October, 1984, National Sand began excavating the sewage pits at the site of the sewage treatment facility. During excavation, National Sand discovered that there was insufficient clay on the site for lining the sewage pits.[1] Thereafter, an alternate site was sought which contained sufficient clay. A site was located in 1985 and the contracts were modified to provide compensation for the additional expenditures of money and labor required as a result of the insufficient clay deposits.

However, on September 16, 1985, it was again discovered that there were insufficient clay deposits in the areas set forth in Progressive Engineering's plans. The contracts were again modified to provide compensation for the additional costs.

Ultimately, National Sand completed its services under the original subcontract and Nagel Construction paid National Sand the amount due under the original subcontract, but refused to pay an additional $258,000 which National Sand claimed was incurred as a result of the insufficient clay deposits.

The instant action was filed on October 1, 1987. Count I of the complaint alleges breach of contract. Count II alleges negligence by Progressive Engineering in preparing the construction plans and in failing to use proper procedures in locating the clay deposits.

First, we briefly consider Progressive Engineering's argument that the jurisdiction of this Court has not been properly invoked because the order appealed from was not properly entered. However, this issue was considered by this Court on Progressive Engineering's motion to dismiss, which denied

---

[1] Progressive Engineering's plan called for the clay to be obtained from excavations on the project site.

the motion by an order entered July 25, 1988. We see no need to revisit the issue.

Next, we briefly consider plaintiff's arguments that Progressive Engineering and the drain commission are proper parties to the suit despite the lack of privity of contract. Contrary to plaintiff's arguments, on the basis of the Supreme Court's decision in *Williams v Polgar,* 391 Mich 6; 215 NW2d 149 (1974), Michigan has not "categorically eliminated" the requirement of privity of contract. Rather, *Williams* concluded that privity is no longer a requirement for liability by a title abstracter. *Id.* at 15-18. That is, a third party injured by the negligence of the abstracter may maintain an action in tort, specifically, negligent misrepresentation. *Id.* at 20. Similarly, this Court has allowed a contractor to maintain an action in tort (specifically, negligence) against a project engineer despite the lack of privity of contract. *Bacco Construction Co v American Colloid Co,* 148 Mich App 397, 413-416; 384 NW2d 427 (1986).

Thus, what can be concluded is not, as plaintiff suggests, that a breach of contract claim can be maintained regardless of privity; rather, it is that a plaintiff may maintain an action *in tort* where he is injured by the defendant's negligent performance of contract even where there is no privity between the parties. Thus, in the case at bar, the trial court properly dismissed plaintiff's breach of contract claims against Progressive Engineering and the drain commission since there was no contractual relationship between plaintiff and those two defendants. However, that does not preclude plaintiff from maintaining its tort claim against Progressive Engineering.[2]

This then brings us to the issue whether the

[2] Plaintiff has not pled a tort action against the drain commission.

period of limitations has run on plaintiff's tort claim against Progressive Engineering. The trial court concluded that the two-year malpractice limitation period of MCL 600.5805(4); MSA 27A.5805(4) was applicable and barred plaintiff's claim. Plaintiff argues that the six-year limitation period for "other personal actions" contained in MCL 600.5813; MSA 27A.5813 should apply, relying on *Bacco, supra.* For the reasons to be discussed below, we believe that § 5805 controls the instant case.

MCL 600.5805; MSA 27A.5805, often referred to as the "negligence" statute of limitations, provides in pertinent part as follows:

> (1) A person shall not bring or maintain an action to recover damages *for injuries to persons or property* unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

> \* \* \*

> (4) Except as otherwise provided in this chapter, the period of limitations is 2 years for an action charging malpractice.

> \* \* \*

> (8) The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property. [Emphasis added.]

Plaintiff, relying on *Bacco, supra,* argues that, since its injury is financial rather than a physical injury to "persons or property," the provisions of § 5813, relating to "other personal actions," apply. While *Bacco* does support plaintiff's position, we believe *Bacco* was incorrectly decided.

The effect of the "injuries to persons or property" language in § 5805 has been the source of a

great deal of confusion in the case law. In *Bacco,* the plaintiff was a contractor engaged to construct a waste-water lagoon. Leaks developed in the lagoon and the work was rejected. By agreement of the parties, the plaintiff made the necessary repairs with none of the parties admitting liability for the problem. The plaintiff sought to recover damages for its additional expenses. Its complaint alleged, inter alia, negligence by the materials supplier and its sales agent as well as by the project engineer. The *Bacco* Court concluded that § 5813 applied since there was no physical harm to persons or property. In reaching its decision, the Court relied on *Coats v Uhlmann,* 87 Mich App 385; 274 NW2d 792 (1978), *Borman's, Inc v Lake State Development Co,* 60 Mich App 175; 230 NW2d 363 (1975), and *Tel-Twelve Shopping Center v Sterling Garrett Construction Co,* 34 Mich App 434; 191 NW2d 484 (1971).

*Bacco's* reliance on *Coats, supra,* is misplaced. First, *Coats* specifically acknowledged that this Court does not strictly require a physical injury for § 5805 to be applicable. *Coats, supra* at 391-392, citing *Stringer v Bd of Trustees of Edward W Sparrow Hosp,* 62 Mich App 696; 233 NW2d 698 (1975). *Coats,* which involved negligent misrepresentations by realtors, looked to *Sweet v Shreve,* 262 Mich 432; 247 NW 711 (1933), a case involving fraud in a real estate transaction. The *Coats* Court concluded that there was no distinction between negligent misrepresentation and fraud and, accordingly, applied § 5813 on the basis of the authority of *Sweet.* However, *Sweet* was decided consistently with a long line of Michigan cases which applied the six-year period of limitations to fraud actions. *Id.* at 435. This Court, in *Stringer, supra* at 700, similarly distinguished away the fraud case of *Case v Goren,* 43 Mich App 673; 204 NW2d 767

(1972),[3] as being decided as part of a long line of Michigan cases applying the six-year limitation period to fraud actions. We agree with *Stringer* and conclude that *Coats* and the fraud cases such as *Sweet* and *Case* are inapplicable to the instant case.

Both *Borman's, supra,* and *Tel-Twelve, supra,* involved negligence by a contractor in performing a contract, and both looked to *Schenburn v Lehner Associates, Inc,* 22 Mich App 534; 177 NW2d 699 (1970), in deciding to apply the six-year limitation period. In *Schenburn,* the plaintiff employed the defendant to survey the plaintiff's property. The survey was allegedly done negligently and the plaintiff was sued as a result of his reliance on the survey. The plaintiff in turn sued the defendant. However, *Schenburn* did not consider whether § 5813 should be applied. Rather, the question was whether to apply § 5805 in light of the tort allegations or § 5807 in light of the contract allegations. The Court concluded that, since the plaintiff's injury was to his financial expectations rather than to his person or specific property, the contract period of limitation should control.

Returning to *Tel-Twelve, supra,* it involved the same decision between applying § 5805 or § 5807. *Borman's, supra,* is unclear as to whether it was relying on *Schenburn* for the proposition that the six-year limitation period of § 5807(8) applied or the six-year limitation period of § 5813 applied. *Bacco, supra,* however, did extend the cases to apply to § 5813, ignoring the fact that both *Tel-Twelve* and *Borman's* involved a contract between the parties and that the case the two were based upon, *Schenburn,* as well as *Tel-Twelve* (and possibly *Borman's*), was considering whether to apply

---

[3] Which was also cited by *Coats, supra.*

§ 5805 or § 5807, with § 5813 not being a consideration.

*Bacco* also ignores the fact that *Stringer, supra,* specifically rejected a narrow reading of § 5805 as requiring a physical injury. Indeed, as the *Stringer* Court noted, § 5805 applies to several causes of action which rarely or never involve a physical injury.[4] *Stringer, supra* at 701-702. *Stringer, supra* at 701, takes an expansive view of what constitutes "injuries to persons" as including " 'invasions of rights that inhere in man as a rational being,' " quoting *Commerce Oil Refining Corp v Miner,* 98 RI 14, 20-21; 199 A2d 606 (1964).

*Bacco* also overlooks the decision in *Krum v Sheppard,* 255 F Supp 994 (WD Mich, 1966), aff'd 407 F2d 490 (CA 6, 1967), which concluded that "injuries to persons" has a broader meaning than physical injuries and includes such things as loss of consortium, libel, slander and deprivation of civil rights. *Id.* at 999.

For the above reasons, we conclude that *Bacco* was incorrectly decided. That is, *Bacco* erred in looking to whether there was physical damage to property in determining which period of limitation to apply. Similarly, plaintiff's argument in the case at bar that § 5805 is inapplicable because there has been no physical injury, merely an injury to its financial expectations, is misplaced.

Concluding that the *Bacco* approach is incorrect does not, however, resolve the question of which statute of limitations should be applied. For this, we must rely on recent Supreme Court cases. In *Citizens for Pretrial Justice v Goldfarb,* 415 Mich

[4] I.e., § 5805(2) (false imprisonment), § 5805(3) (malicious prosecution), § 5805(5) (sheriff's misconduct), § 5805(6) (constable's misconduct), and § 5805(7) (libel and slander). Also, malpractice, § 5805(4), when committed by a physician results in physical injury, but rarely does when committed by an attorney.

255; 327 NW2d 910 (1982), the Court considered whether to apply § 5805 or § 5813. The Court rejected the plaintiffs' argument that § 5805 was inapplicable because their claims did not allege injuries to persons or property, but instead were claims for pecuniary loss.[5] *Id.* at 268. Rather, the Court stated that pecuniary losses are an element of damages and do not determine the applicable period of limitation. *Id.* The Court went on to conclude that § 5805(7) [now § 5805(8)] applies to traditional, primarily common-law, torts. *Id.* at 269. Thus, the Court concluded that, since the plaintiffs' injury was not the result of a traditional tort, it must fall under the residual six-year period of limitation contained in § 5813.

The cases cited by *Goldfarb* also help illuminate the issue. *Goldfarb* cited *Rhule v Armstrong,* 384 Mich 709; 187 NW2d 223 (1971) (wrongful death), and *Coates v Milner Hotels, Inc,* 311 Mich 233; 18 NW2d 389 (1945) (negligence by hotel in allowing the plaintiff to be assaulted by third party in the hotel), as examples of the three-year period for traditional, common-law torts.[6] As examples of cases falling under the six-year residual period of limitation under § 5813, *Goldfarb* cited *Metzen v Dep't of Revenue,* 310 Mich 622; 17 NW2d 860 (1945) (assumpsit for sales tax refund), and *Walper v Knowles,* 295 Mich 687; 295 NW 363 (1940) (action to collect assessment by banking commissioner against bank stockholder pursuant to a statute). See also *Hart v Detroit,* 416 Mich 488;

---

[5] The plaintiffs claimed that defendants, bail bondsmen, charged a greater fee than permitted by statute.

[6] See also *Baatz v Smith,* 361 Mich 68; 104 NW2d 787 (1960), which applied the three-year period of limitation in an assumpsit action with facts similar to *Coates, supra,* and *James v Logee,* 150 Mich App 35; 388 NW2d 294 (1986), which, in light of *Goldfarb, supra,* applied the three-year period under § 5805, rather than the six-year period under § 5813, for a tortious interference with a contract claim, concluding that it was a traditional, common-law tort.

331 NW2d 438 (1982), wherein the Court applied § 5813 to an inverse condemnation proceeding.[7]

Next, we consider the impact of *Sam v Balardo,* 411 Mich 405; 308 NW2d 142 (1981), and *Dennis v Robbins Funeral Home,* 428 Mich 698; 411 NW2d 156 (1987). In *Sam,* the Court applied the two-year malpractice period of limitation under § 5805 to an attorney malpractice action. In *Sam,* the attorney's alleged malpractice was the failure to attend to the defense of a client's civil litigation. There was no physical injury. In *Dennis,* the plaintiff's injury was mental anguish. The Court applied the three-year period of limitation under § 5805(8).[8]

Turning to the case at bar, if plaintiff pled malpractice or some other traditional, common-law tort, then we must apply § 5805. Otherwise, § 5813 would be appropriate. In looking to the pleadings, plaintiff's complaint is not a picture of clarity. However, Count II appears to sound in common-law negligence. Moreover, in its brief on appeal, plaintiff declares the claim to be one of negligence. Finally, the trial court and Progressive Engineering categorize plaintiff's claim as malpractice, which is certainly a common-law tort. Accordingly, we conclude that plaintiff's claim as pled falls under § 5805 as either a malpractice claim under § 5805(4) or a negligence claim under § 5805(8).

It is not altogether clear, however, that the trial court's categorization of this case as malpractice for purposes of the statute of limitations issue is

[7] The common theme of *Goldfarb, Metzen, Walper,* and *Hart* is that the right to recovery does not arise from a common-law right, but arises from a statute. *Goldfarb* involved overcharging under the bail bondsmen statute, *Metzen* a refund under a tax statute, *Walper* the collection of an assessment under a statute, and *Hart* the right to compensation for an inverse condemnation.

[8] It should be noted, however, that the *Dennis* Court did not consider whether § 5813 would be applicable. Rather, it was faced with the question whether to apply the two-year malpractice period of § 5805(4) or the three-year period of § 5805(8).

correct. "Malpractice" does generally refer to professional misconduct or lack of skill. See Black's Law Dictionary (5th ed), p 864. However, "malpractice" has a narrower definition for purposes of applying the two-year period of limitation under § 5805(4).

In *Sam, supra,* the Court noted that the Revised Judicature Act does not define the term "malpractice" as used in § 5805. Accordingly, the Court held that "malpractice" within the meaning of § 5805 must refer only to those actions which were recognized as constituting malpractice when the Judicature Act of 1915 and the Revised Judicature Act of 1961 were adopted. *Sam, supra* at 425. Since the common law recognized an action for legal malpractice at the time of the adoption of the JA and the RJA, it follows that legal malpractice is "malpractice" within the meaning of § 5805(4) and, therefore, malpractice claims against attorneys are subject to the two-year period of limitation found therein.

The Supreme Court revisited the issue in *Dennis, supra. Dennis* involved a claim against a funeral director. The Court concluded that since the common law did not recognize a malpractice action against a funeral home or funeral director when the JA or RJA was enacted, such a cause of action does not come within the meaning of "malpractice" for purposes of the statute of limitations. *Dennis, supra* at 703. This is true even though the Court recognized that a person engaged in the practice of mortuary science is practicing a profession. *Id.* at 705. Thus, not all professional misconduct or negligence is "malpractice" for purposes of the statute of limitations.[9]

---

[9] Progressive Engineering's argument to the contrary is, therefore, incorrect. Progressive Engineering argues that professional negligence by engineers must be malpractice and cannot be converted to simple

Thus, we must determine whether the common law recognized a malpractice claim against engineers. The earliest case we have been able to find which appears to recognize a malpractice action against an engineer is *Marysville v Pate, Hirn & Bogue, Inc,* 154 Mich App 655; 397 NW2d 859 (1986). However, the *Marysville* decision seems to be based upon the assumption that negligence by an engineer is malpractice rather than concluding that an action against an engineer is a malpractice action. The Court concluded that MCL 600.5839; MSA 27A.5839[10] did not apply to the case and, therefore, affirmed the trial court's application of the two-year malpractice period of limitation. The Court, apparently assuming that the case was properly categorized as a malpractice action, did not discuss whether the three-year negligence limitation should be applied rather than the malpractice limitation.

The *Marysville* decision was followed by *Midland v Helger Construction Co, Inc,* 157 Mich App 736; 403 NW2d 218 (1987). *Midland* concluded that the so-called general malpractice statute, MCL 600.5838; MSA 27A.5838, applies to architects, citing *Sam, supra* at 425-427, and *Chapel v Clark,* 117 Mich 638, 640; 76 NW 62 (1898). *Sam,* however, merely concluded that the malpractice period of limitation applies to attorneys as well as physi-

---

negligence by semantics, invoking Gertrude Stein's famous truism from *Sacred Emily,* "Rose is a rose is a rose is a rose." See Bartlett, *Familiar Quotations* (13th ed, 1955), p 877. However, to extend Progressive Engineering's analogy, the Supreme Court has distinguished between yellow roses and red roses, and the color of the rose determines whether a two-year or a three-year period of limitation is applied.

[10] This statute, inter alia, contains a special restriction on actions against architects and engineers for injuries arising from a defective and unsafe condition of a building. Specifically, the action must be brought within six years of the time the building is occupied or within one year after the defect is discovered or should have been discovered.

cians and surgeons, adopting the rule discussed above concerning the common law recognizing a malpractice action against the particular profession at issue. *Id.* at 425. Moreover, *Sam* specifically rejected the argument that § 5838 establishes that the malpractice period of limitation applies to all state-licensed professionals; rather, *Sam* concluded that § 5838 pertains to when a malpractice action accrues and does not define malpractice.[11] As for the reference to *Chapel, supra,* while there is some language in the opinion which indicates that architects have the same level of professional responsibility as attorneys and physicians, the case itself was not a malpractice action. Rather, it was an action in assumpsit by an architect to recover his fee from a dissatisfied client. Moreover, even if *Chapel* could be read as recognizing that a malpractice action may be brought against architects, it does not recognize such an action against engineers.[12]

[11] See, however, *Adkins v Annapolis Hosp,* 420 Mich 87; 360 NW2d 150 (1984), wherein the Court concluded that the Legislature's 1975 amendment of § 5838 to add a list of various health-care professionals necessitated the conclusion that those professionals could be sued for malpractice. The Court, however, reaffirmed the principle that § 5838 is an accrual provision and not a definitional section. *Adkins, supra* at 94. It viewed the Legislature's amendment as a modification of the common law to add the list of health-care professionals to the list of those professionals who could be guilty of malpractice. *Id.* at 95.

[12] We should add that we disagree with the trial judge that *Bacco, supra,* stands for the proposition that an action for malpractice may be maintained against engineers. Rather, *Bacco* merely concluded that a *negligence* action may be maintained, never labeling such an action "malpractice." While professional negligence may be casually referred to as "malpractice," as discussed above, the two-year malpractice period of limitation applies only to those actions which the common law recognized as being "malpractice" or, in light of *Adkins, supra,* that the Legislature has specifically referred to as "malpractice." As to the latter point, we note that § 5839 refers to an engineer's "gross negligence," not his "malpractice." In any event, even if *Bacco* should be read as standing for the proposition that engineers commit malpractice, it appears to be a recent determination and does not support the proposition that the common law recognized such an action. In fact, the discussion in *Bacco, supra* at 413-416, suggests that

Our research leads us to believe that an action for malpractice against engineers was not recognized by the common law at the time of the passage of the JA and the RJA. Accordingly, under *Sam, supra,* the two-year malpractice period of limitation would be inapplicable and it would be necessary to apply the three-year negligence period of limitation under § 5805(8). However, we are reluctant to reach such a determination where the issue was not addressed by the trial court or briefed by the parties. Since, if we were to apply the three-year period of limitation to this case, a remand would be necessary to determine when plaintiff's action accrued,[13] our decision is without prejudice to Progressive Engineering's arguing that the common law did recognize a malpractice action against engineers sufficiently long ago to meet the *Sam* requirement.[14]

Accordingly, unless Progressive Engineering concedes that the three-year period of limitation is applicable, the trial court is free to conclude that the two-year period of limitation for malpractice nevertheless applies *provided* Progressive Engineering establishes that the common law recog-

the tort liability of engineers to third parties is a relatively recent innovation in the law. See also *O'Brien v Hazelet & Erdal,* 410 Mich 1, 14; 299 NW2d 336 (1980).

[13] This issue was not raised on appeal or discussed in the trial court's opinion beyond the conclusion that the action accrued more than two years before the complaint was filed. Progressive Engineering's brief indicates that "the most charitable view" would indicate that plaintiff's action accrued on or about September 16, 1985, which would be within three years prior to the filing of the complaint on October 1, 1987.

[14] We would note that, under our reading of *Sam,* it is not merely sufficient that the common law recognized a tort action against engineers, but that the action was known as "malpractice." Under *Sam,* if the common law did not recognize an action as being for malpractice, the Legislature could not have intended to include such an action within the term "malpractice" as used in the statute of limitations.

nized a malpractice action against engineers in accordance with *Sam.*

Finally, we would like to urge the parties to seek review of this issue in the Supreme Court. As our discussion of this issue indicates, the determination of when to apply § 5805 rather than § 5813 has produced a great deal of confusion and the case law is difficult, if not impossible, to harmonize.[15] Accordingly, further review and illumination of this issue by the Supreme Court would be welcomed.

For the above reasons, we affirm the dismissal of the breach of contract claims against both the drain commission and Progressive Engineering. However, the grant of summary disposition in favor of Progressive Engineering on the tort claim is reversed.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Defendant Missaukee Sanitary Drain Commission may tax costs; appellant and defendant Progressive Engineering may not tax costs, neither having prevailed in full.

[15] Including some older Supreme Court cases which we have reviewed, but do not discuss in this opinion.